J. N. MASSEE AND WIFE, JENNESS C. MASSEE *v.* BRUNO SCHILLER, ALSO KNOWN AS BRUNO D. SCHILLER AND B. E. SCHILLER AND WIFE, BERTA SCHILLER

5-4337                                                    420 S. W. 2d 839

Opinion delivered November 27, 1967

*John B. Hainen,* for appellants.

*Shaw & Shaw,* for appellees.

J. Fred Jones, Justice. Mr. and Mrs. Schiller own most of the Northeast Quarter of the Southeast Quarter of Section 36 in Township 4 South of Range 32 West in Polk County, Arkansas, and Mr. and Mrs. Massee own the forty-acre tract immediately south of the Schiller tract. This is the second appeal to this court from decrees of the Polk County Chancery Court involving the same parties and concerning the south twenty feet of the Schiller tract.

In the first case, *Massee v. Schiller,* 237 Ark. 809, 376 S. W. 2d 558, Massee and his wife, as plaintiffs, alleged title by adverse possession to the south twenty feet of the Schiller tract. The background facts and de-

cree in that case being necessary to an understanding of the issues and decree in the case at bar, we restate the pertinent facts as follows:

Many years ago a roadway had been in use over the entire length of the south twenty feet of the Schiller tract and fences had been erected on each side of the roadway forming a lane. The east 822 feet of the lane had fallen into disuse and had long been abandoned as a roadway, but Massee continued to use the west 498 feet for ingress and egress to and from a house on his own tract of land. Schiller cleaned out the east 822 feet of the old lane and erected a new fence on the south side, thus enclosing that portion of the old roadway within his cow pasture. The west 498 feet of the lane or roadway was still in use by Massee and had not been disturbed by Schiller, when Mr. and Mrs. Massee brought suit against the Schillers to quiet title in themselves to the entire south twenty feet of the Schiller tract.

The chancellor found from the evidence in that case, including the testimony of a court appointed surveyor, that the Schillers owned no land *"South of the old established fence and survey line as found by the Court to be the division line between these two forty-acre tracts."* Title to the south forty-acre tract was quieted and confirmed in Mr. and Mrs. Massee and the chancellor's decree, insofar as it relates to the Schiller tract and to the present litigation, is as follows:

"Bruno E. Schiller, (B. E. Schiller) and wife, Berta Schiller, are the owners of the Northeast Quarter of the Southeast Quarter (NE¼ SE¼) of Section 36 in Township 4 South of Range 32 West in Polk County, Arkansas, and the title to this tract of land is quieted in the defendants as against the plaintiffs, J. N. Massee and wife, Jenness C. Massee, *subject to a roadway easement across the South side of the West 498 feet of said forty-acre tract, as the same is now located."* (Emphasis ours)

The decree was affirmed by this court, (*Massee* v. *Schiller, supra*) and it is the italicized portion of that decree that gives rise to the present litigation.

Following our mandate of affirmance, Schiller removed the old fences on each side of the easement over the *west* 498 feet of the south twenty feet of his 40-acre tract and erected a new fence along his property line south of the easement and placed cattle guards in his fence at each end of the easement.

Massee brought the present action for trespass alleging that Schiller has encroached upon the Massee land by building a new fence some 10 to 12 feet south of the survey along the old fence line south of the old roadway, and by removing the old fence along the north side of the easement, thereby enclosing the easement into pasture; in permitting cattle to roam over the easement and by placing cattle guards across said easement, thus interfering with Massee's free use of the easment.

After hearing all the evidence, the chancellor entered a decree as follows:

"IT IS THEREFORE, BY THE COURT, CONSIDERED, ORDERED, ADJUDGED AND DECREED that defendants Bruno Schiller and wife, Berta Schiller, should have full use of their land subject to the prescriptive easement of the plaintiffs for ingress and egress. Old fences are not to be restored. Plantiffs are, at plaintiffs's expense, to build and maintain cattle guards at the West end of the 498 foot lane and at the East end of said lane. Plaintiffs can continue to use the said lane. Plaintiffs are given the right to maintain the lane by deposit of gravel from time to time and by grading. Plaintiffs are granted the right to maintain a walk-way and hand rail across the two cattle guards.

"Both parties to this litigation, plaintiff and defendant are, each and both, restrained and enjoined from interfering with the herein specified rights of the other party.

"All other relief sought by parties plaintiff and defendant, is specificly denied.

"Court costs to date in this cause are to be paid by plaintiffs and defendants, one-half each for which execution may issue."

Upon their appeal from this decree, Mr. and Mrs. Massee rely upon the following points for reversal:

"1. The Court erred in following the Prior Supreme Court Opinion which was res judicata on the law and the facts, permitting further encroachment and enlargement of rights at the expense of appellants.

"2. The Court erred in permitting a reduction in the prescriptive rights of appellants to use the established lane unimpeded by cattle, gates and cattle guards.

"3. The Court erred in permitting the erection of a new fence contrary to the established law of the case."

We find no difficulty in disposing of points one and three relied on by appellants. The survey maps introduced as exhibits 8 and 9 to surveyor Woods' testimony at the trial in the former case, show the true boundary line between the two forty-acre tracts to be some ten to twelve feet south of the old fence line on the south side of the old lane, the deviation being in the old fence line and not the survey line. In the second trial, appellee Schiller testified that he built his fence one foot inside the survey line as marked and staked out by the court appointed surveyor. We conclude that the appellees did not violate the original decree, as affirmed by this court, in erecting their fence one foot within the boundary line as indicated on survey plats introduced as exhibits 8 and 9 in the original trial of this case, and we conclude that the chancellor did not err in so holding.

The second point relied· on gives us the most difficulty. The precise question on this appeal is whether appellees must re-erect a fence along the north side of the easement where it originally stood in order to keep their cattle in their pasture and out of the easement, or whether they may maintain their fence along their property line south of the easement, thus taking the easement into their cow pasture. The most important part of this question is whether appellees may maintain cattle guards at each end of the easement to prevent their cattle from straying from the confines of the pasture and from their own land. The chancellor held that this may be done, and we agree.

As new lands are placed under fence, or into agricultural production, and the communities become more thickly settled, the acquisition of roadway easements by prescription becomes less frequent. The cattle guard is a well known device extensively used as a substitute for a gate since the comparatively recent exit of the horse and buggy days, consequently, most of cases in point concern gates and bars rather than cattle or stock guards, but the *problem* involved is not new to the courts. The reported cases are of little value in determining the precise question before us, however, because the decisions are as varied as the facts supporting them.

We are not unmindful of the line of decisions from other states seeming to follow the general proposition that the right in a prescriptive easement is measured by its use and where a roadway has been gained by prescription, and no gates or bars have been erected during the requisite term, none can afterwards be erected. *Melton* v. *Donnell*, 173 Tenn. 19, 114 S. W. 2d 49; *Shivers* v. *Shivers*, 32 N. J. Eq. 578; *Switzer* v. *Armantrout*, 106 Ind. App. 468, 19 N. E. 2d 858; *Bolton* v. *Murphy*, 41 Utah 591, 127 P. 335; *Bishielbs* v. *Campbell*, 200 Md. 622, 91 A. 2d 922.

We think the better rule to be as stated in Restatement of the Law, Property-Servitudes, § 481, as fol-

lows:

> "The possessor of land subject to an easement created by prescription is privileged, as against the owner of the easement, to make such uses of the servient tenement as are not incompatible with the use authorized by the easement."

In the comment under this section of the restatement we find as follows:

> "Subject to the privileges of the owner of the easement, the possessor of a servient tenement retains the usual privileges that go with possession. In so far as his relations with the owner of the easement are concerned, the possessor of the servient tenement is privileged to make all uses of his land which do not interfere with the use authorized by the easement.
>
> * * *
>
> As the extent of the easement becomes more difficult to discover, the relations between the owner of it and the possessor of the servient tenement become increasingly subject to the governing principle that neither shall unreasonably interfere with the use of the land by the other. * * * An interference by one with the use by the other which is reasonable in one situation may become unreasonable in another. Thus, as the land of the servient possessor becomes more highly developed it may be proper to require the owner of an easement to submit to inconveniences to which it would have been improper to have required him to submit before the additional development. The determination as to what constitutes an unreasonable interference on the part of the possessor of the servient tenement with the use of the land by the owner of the easement depends primarily upon a consideration of the relative advantage to him of his desired use and

the disadvantage to the owner of the easement."

The extent and limitations of an easement created by conveyance are usally fixed by the conveyance and set out in its terms, so it is in prescriptive easement, much as the one we have here, where difficulty arises in measuring the rights of the owner of the easement and the rights of the possessor of the servient estate, and adjusting the conflicts between their respective rights. Where the owner of the land has a right to use it, subject to the prescriptive right of another to travel a well defined designated route across the land, some degree of inconvenience is to be expected and tolerated in the exercise of these overlapping rights, and the conflicts that arise in the exercise of such rights, are measured by reasonableness of interference of one with the other. What is reasonable or not reasonable depends on the facts and circumstances of each case and is a matter on which the minds of reasonable men may differ.

The chancellor held that the appellee had a right to erect his fence on boundary line south of the easement, and that cattle guards may be installed at each end of the easement and in this holding we agree with the chancellor. The chancellor further held that the *appellant* is to build and maintain the cattle guards at each end of the easement, and in this we do not agree with the chancellor.

During the running of the prescription in this case, no cattle guards were constructed or maintained across the easement and none were needed by the appellants or required for their use and benefit. It was through the acts of the appellees that cattle guards became necessary at all in this case, and if appellees now desire to use appellants' right-of-way easement for their purpose, they must do so in such manner that will not unreasonably interfere with appellants' use, so *appellees*

must provide the means for the continued unobstructed passage for the appellants through appellees' new fence at both ends of the right-of-way easement. If appellees are to enclose appellants' right-of-way by a fence, the appellees must construct and maintain the cattle guards with the walk-way and hand rails as provided in the chancellor's decree, and in such manner that appellants may enjoy uninterrupted and unobstructed travel over the roadway along their easement.

We find no cases involving cattle guards as such, but similar situations concerning gates and bars have been before the courts many times. In the Mississippi case of *University of Mississippi* v. *Gotten,* 119 Miss. 146, 80 So. 522, the court said:

"There is another question yet to answer. Conceding the easement, can we say that the erection and maintenance of the gate across the roadway appreciably interfered with, or unreasonably limited, the enjoyment of the easement?

"Upon this phase of this case the authorities are not in harmony, but we believe that the facts of each case should control. If it appears that the erection of gates will not unreasonably interfere with the enjoyment of the easement, it is our opinion that the owner of the servient estate is justified in erecting gates. Generally speaking, every owner of lands has a perfect right to fence them, provided, of course, to do so will not appreciably interfere with vested rights of others."

In *Chesson* v. *Jordon,* 224 N. C. 289, 29 S. E. 2d 906, we find the following language:

"While the authorities are at variance as to the right of an owner of land burdened with a right-of-way acquired by prescription to erect gates across the way, the weight of authority is in accord with

the holding that such a right exists in the case of agricultural land. 17 Am. Jur., 1012, sec. 122; 28 C.J.S., Easements, § 91, p. 770; Annotation 73 A.L.R. 788. See also *Alexander* v. *Autens Auto Hire,* 175 N. C. 720, 95 S. E. 850; *Jacobs* v. *Jennings,* 221 N. C. 24, 18 S. E. 2d 715.

"Generally speaking, the nature of the easement acquired rather than the character of the use must control the rights of the parties. Hence, no hard and fast rule may be prescribed. Each case must be controlled, in large measure, by the particular facts and circumstances being made to appear.

"Ordinarily, however, a mere private easement for the general purpose of ingress and egress over and across agricultural lands carries with it no implication of a right to deprive the owner of the servient estate of the full enjoyment of his property. It is subject only to the right of passage. Hence, he may erect gates across the way when necessary to the reasonable enjoyment of his estate, provided they are not of such nature as to materially impair or unreasonably interfere with the use of the lane as a private way for the purposes for which it has theretofore been used."

In the Kentucky case of *Willard Wynn* v. *Alex Powell,* 286 S. W. 2d 367, gates and bars had been maintained across the right-of-way through the running of the prescription and the servient owner claimed the right was by sufferance instead of prescription, but in that case the court said:

"Under our rules governing passway cases, even if we should ignore the evidence concerning the existence of gates across the passway, the appellants would still be entitled to maintain gates. In *Bridwell* v. *Beerman,* 190 Ky. 227, S. W. 165, at page 166, it was said:

" 'If one should acquire a passway by long use over and through the fields of a neighbor, and this passway was unfenced, the owner of the servient estate would have the right to erect a gate or gates across the way to aid him in fencing his farm or in dividing it up into fields.'

"Appellant as the owner of the property in fee is entitled to use it in a lawful manner, as in this case, to pasture his livestock. But in doing this as the owner of the servient estate, he cannot destroy or unduly obstruct the rights of the dominant estate created by the easement over the property. The servient owner must permit the free and unrestricted use of the passway by the owner of the dominant estate while the latter must use his right so as to be as little burdensome as possible to the servient estate."

In our own early case of *Hockersmith* v. *Glidewell,* 153 S. W. 252, suit was instituted to enjoin the servient owner from maintaining a bar across a road right-of-way over a prescriptive easement. The chancellor granted the injunction and in reversing the chancellor, this court said:

". . . [W]e do not think that the evidence shows that the placing of the bar across the road by appellants, for the purpose of keeping their horses off of their crop, was an obstruction of such a material character as to interfere with the reasonable enjoyment of the easement by appellee."

We conclude that the chancellor was correct except in requiring the appellants, rather than the appellees, to construct and maintain the cattle guards. In citing cases, supra, pertaining to gates and bars erected across rights-of-way, we do not imply that the appellees in this case, or the owner of the servient estate in any other case, would have the right to erect gates or bars or anything else that would unreasonably interfere with

the useful enjoyment of the easement.

Appellants' easement for a roadway in this case was established by prescription and fixed by court decree which has been affirmed by this court. The easement runs with the ownership of the appellants' land and its use continues free of unreasonable interference by the servient owner until the ownership of the easement is merged with the ownership of the servient estate, or until the easement is abandoned by its owner.

We simply hold that the building of cattle guards at each end of the easement in the case at bar, does not unreasonably interfere with appellants' use of the easement under the facts of this case, but we hold that the duty of building and maintaining the cattle guards with walk way and hand rails, as provided in the decree, falls upon the appellees.

This cause is remanded to the trial court for the entry of a decree not inconsistent with this decision. Each of the parties will bear their own costs.

Affirmed as modified.

HARRIS, C. J., FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. I cannot understand how either the trial court or the majority of this court arrives at a result which permits or approves the action of appellees in erecting a new boundary fence south of the easement of appellants. I agree that a review of the first appeal[1] in this case is essential to an understanding of the issue involved here. I do not agree with the majority's analysis of facts in that case. Then, appellants sought, among other things, a decree:

---

[1] Reported as *Massee v. Schiller*, 237 Ark. 809, 376 S. W. 2d 558.

1. Quieting their title against all claims of appellees to a 20-foot lane across the entire width of the NE¼ SE¼ of Section 36, Township 4 South, Range 32 West;

2. Directing appellees to replace a fence in its former location on the north side of the approximately 790 feet of the east end of the lane, and to place same in as good condition as it was at the time of removal;

3. Restraining appellees from further relocation of said fences and from interference in any manner with appellants' use of the lane, including moving fences and permitting cattle to come into and through the lane.

Appellees prayed in their answer that their title be quieted to the NE¼ SE¼ of Section 36, Township 4 South, Range 32 North, *subject to a roadway easement in favor of appellants over that part of the lane which extends along the dividing line* between the two forties for a distance of approximately 530 feet. In their amended answer, appellees prayed that the court order that the boundary line fences be located upon the true boundary line, *subject only to the roadway easement,* "which these defendants admit the plaintiffs are using, but that this easement should be across the south 20 feet of the west 498 feet of the NE¼ SE¼, Section 36 in Township 4 South, Range 32 West * * *."

The trial court ordered that each party be permitted to make a survey without interference of the other. At the request of appellants, the county surveyor made a survey, witnessed by Schiller. This survey located a lane or road completely across the south side of the Schiller tract described as the NE¼ SE¼ of Section 36 in Township 4 South, Range 32 West, varying in width from 20 to 24 feet. There was a fence north of this roadway and one south thereof. The fences appeared to have

once extended all the way across the tract, but were down and in a state of disrepair east of the point where a roadway from this lane entered the Massee tract some 495 to 498 feet east of the west boundary line. For the west 498 feet, the north fence was the south boundary of the Schiller *pasture*. On the south side of this roadway, the fence had been partially removed. The north fence was 32 feet north of the true southwest corner of the NE¼ SE¼, Section 36. The south fence was, thus, approximately 12 feet north of this true corner. The roadway and fences angled slightly toward the south as they proceeded eastward but all remained north of the true line. The roadway and south fence had fallen into partial disuse and decay east of the turn-off to the Massee house, but the north fence connected with an old fence crossing the entire 40-acre tract. Trees had grown up between the old south fence and the true boundary line. The trial court found that (1) *the established bounadry line between the two 40-acre tracts was "the old fence line which divides"* them; (2) appellants' claim to a strip twenty feet in width across the east 822 feet laying wholly upon appellees' land was without merit because of abandonment; (3) appellants had a prescriptive easement for roadway purposes across appellees' lands in the place it was then located on the south side of the NE¼ SE¼ along the west 498 feet of the 40-acre tract; (4) *appellees had no claim of ownership to the SE¼ SE¼ "south of the old established fence and survey line as found by the court to be the division line between these two 40-acre tracts."* This decree was affirmed by this court. There can be no question that the south fence line of the roadway or lane was definitely determined to be the boundary line between appellants and appellees for the west 498 feet of each tract.

After the mandate of this court was filed, appellees cut down the trees south of the boundary fence, took down their pasture fence along the north line of this roadway and put a new fence some 10 or 12 feet south of the old fence line which had been determined to be

the boundary line. In its decree now appealed from, the trial court disregarded its previous decree and the mandate of this court by not requiring the removal of this new fence, at least to the property line along the old fence line on the south side of the roadway.

I would reverse and remand with directions to enter a decree requiring the appellees to remove any and all fences south of the old fence line south of the roadway easement across the west 498 feet of appellees' lands.

I am authorized to state that Harris, C. J., and Byrd, J., join in this dissent.

CONLEY BYRD, Justice, dissenting. My dissent is based upon the premises that the court is permitting a material alteration of the easement acquired by appellants; that a cattle guard is but another form of a gate or gap; and that the roaming of cattle on a road, if not a type of obstruction, is at least a nuisance.

In *Craig* v. *O'Bryan*, 227 Ark. 681, 687, 301 S. W. 2d 18 (1957), we said:

> "As a general rule, when the character of an easement is once fixed, no material alteration can be made in physical conditions which are essential to the proper enjoyment of the easement except by agreement."

The logic of not permitting a material alteration in the physical conditions essential to an easement is amply demonstrated in the present case. Here appellants had acquired an easement by prescription to the use of a road within a lane. The important element is not the existing improvements to the property of either party, but the extent of the *right* to utilize the easement. It is common knowledge that the access to property materially affects its market value—for instance, many people will pay more for property at the end of a road,

and property along an improved public road is always more valuable than property back off the road. Consequently, it logically follows that in purchasing or improving property one should be entitled to rely on reasonable permanence of the access as it exists. Having to drive through a cow pasture to reach a proposed home site would materially affect the desires of many people to make substantial improvements. Therefore, in my opinion, today's decision will materially reduce the market value of the property of many of our citizens, who through the years have come to rely on roads acquired by prescription.

I agree with the majority that a ". . . cattle guard is a well known device extensively used as a substitute for a gate . . ." Consequently, the majority opinion runs counter to the many decisions of this court which hold that acquiescence for more than seven years in the existence of a gate across a road established by prescription amounts to abandonment of the prescription right. See *Nelms* v. *Steelhammer,* 225 Ark. 429, 283 S. W. 2d 118 (1955), and *Lusby* v. *Herndon,* 235 Ark. 509, 361 S. W. 2d 21 (1962). Not only is that the effect of the decision but the majority opinion, for precedent to support its position, quotes and relies on cases from other jurisdictions which specifically permit the placing of gates across private ways. In *Brooks* v. *Reedy,* 241 Ark. 271. 407 S. W. 2d 378 (1966), we held that the parties claiming the road by prescription lost or abandoned their right thereto when Brooks enclosed his land and placed gates across the road for a period in excess of seven years, *even though the gates were left open during certain seasons of the year, especially during winter months.* If the acquiescence in the existence of an unlocked wire gap or gate for the statutory period of seven years amounts to the abandonment of a prescriptive easement, how much less does this apply to the existence of a cattle guard? It appears to me that the property owner asserts the permissiveness of the passage as forcefully in one instance as in the other.

The majority opinion leaves dangling the issue of whether the maintenance of a cattle guard across an easement for seven years will result in an abandonment of the easement, or whether one who uses a road where a cattle guard is maintained can ever acquire an easement. I think the citizenry of this state would best be served by treating a cattle guard as a gate, as is recognized by the majority opinion, and the rights of the respective parties should be determined in accordance with our existing law on gates and gaps.

The proof in the record shows that Miss Sarah Crawford, the sister and sister-in-law of appellants, resides on their property, and that the roaming of the cattle on the road amounts to an obstruction of the road as to her. While prior to Initiated Measure No. 1 of 1950 (the so-called Stock Law) this argument might not have been tenable, it appears that the people of this state, by prohibiting the roaming of cattle on the public roads, have recognized cattle to be, if not an obstruction to the use of the roads, at least a nuisance. As far as an individual's use of a private road is concerned, the roaming of cows on the road to his home is certainly as obnoxious and obstructive as their roaming on a public road would be.

Finally, even if I should accept the majority theory that the trial court has some discretion in permitting the use of cattle guards on a private way, I think the trial court abused its discretion in this instance. The record conclusively shows that the road in issue, 20 feet wide, extends along appellees' southern boundary for a distance of only 498 feet. This total area amounts to less than one-fourth of an acre, and when the roadway, which appellants have been granted the right to grade and maintain, is taken out of the area involved, little or no practical benefit from the use of the area as a pasture will result to appellees except as it may add fuel to the feud that has been existing between these

parties.

Therefore, I would reverse and remand the case with directions to appellees to take the road out of their pasture.

HARRIS, C. J., and FOGLEMAN, J., join in dissent.