Donald L. SWAGGERTY and Kathryn Swaggerty, Plaintiffs–Respondents, and Cross–Appellants,

v.

R.S. McKINZEY and Eleanor McKinzey, and Dave Clark and Ruth Clark, Defendants–Appellants, and Respondents in Cross–Appeal.

Nos. 18631, 18643.

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 1994.

Motion for Rehearing or Transfer
Denied May 18, 1994.

Application to Transfer Denied
June 21, 1994.

Wayne P. Strothmann, Clinton, for defendants-appellants, and respondents in cross-appeal.

J.D. Baker, Baker & Dull, Osceola, for plaintiffs-respondents, and cross-appellants.

GARRISON, Judge.

Plaintiffs sought a declaratory judgment establishing a prescriptive easement for a roadway across Defendants' property and also sought to enjoin Defendants from maintaining an existing cattle guard and placing other cattle guards, gates or other obstructions across the roadway.

Trial was to the court without a jury. From the evidence, it appears that Plaintiffs' property consists of approximately 73 acres and adjoins Defendants' property on the east. Defendants' property consists of approximately 91 acres and is bounded on the west by a county road. The road in question extends along the north side of Defendants' property generally from the county road on the west to Plaintiffs' property on the east. It was referred to in the testimony as a "lane," "single lane road," "just two tracks," and a "two-track lane." The photographic evidence supports these descriptions.

At trial Defendants did not contest Plaintiffs' right to use the road and that is not an issue here. The evidence was undisputed that the road had been used for ingress to and egress from Plaintiffs' property longer than the period necessary to acquire a prescriptive easement, and that during that time there had never been a gate or cattle guard on the lane except a gate maintained by Plaintiffs and their predecessors at the east end where it entered Plaintiffs' property.

Several months prior to trial, Defendants placed a cattle guard 90 feet east of the point where the lane entered the county road. Defendant R.S. McKinzey testified that he purchased the property to pasture cattle and built the cattle guard to accommodate that use.[1]

The trial court determined that Plaintiffs were entitled to an easement by prescription for ingress, egress, use and maintenance over a 24–foot–wide strip of land described as 12 feet on each side of the center of the traveled portion of the road. The court also enjoined Defendants from "erecting or maintaining any fences, barriers, gates, panels, cattle crossings or other obstructions across the roadway, except the one cattle guard with panels presently installed," and ordered that

---

1. Both Defendant R.S. McKinzey and Plaintiff Donald Swaggerty testified that they had discussed the construction of a cattle guard previously. They had initially agreed that one would be installed at the west end of the lane, but Swaggerty testified that he informed McKinzey that he had changed his mind before the latter had acquired the materials to construct it.

Defendants were responsible for maintaining, repairing and replacing the existing cattle guard so as not to interfere with Plaintiffs' use of the roadway.

Both sides have appealed. Defendants, in Case No. 18631, contend that the trial court erred in enjoining them from constructing and maintaining an additional cattle guard across the roadway and in setting the width of the roadway easement at 24 feet. In Case No. 18643, Plaintiffs contend that the trial court erred in permitting Defendants to maintain the existing cattle guard. These appeals have been consolidated.

■ Our review of this court-tried case is pursuant to Rule 73.01(c). Accordingly, we are to affirm the judgment unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Webb v. Finley*, 806 S.W.2d 501, 502 (Mo.App.1991).

## ISSUES RELATING TO THE CATTLE GUARDS

■ Plaintiffs contend that since no cattle guards existed across the roadway during the prescriptive period, none should be permitted now. They rely on cases such as *Riggs v. City of Springfield*, 344 Mo. 420, 126 S.W.2d 1144, 1149 (banc 1939), for the proposition that the character and extent of a prescriptive easement is fixed and determined by the use under which it is gained. Extending this proposition, Plaintiffs cite several Missouri cases in which the courts indicated that a servient owner could not erect "gates or bars" across a road where there had been none while the prescriptive rights were ripening. *See Huter v. Birk*, 510 S.W.2d 177, 183 (Mo.1974); *Carpenter–Union Hills Cemetery Assn. v. Camp Zoe, Inc.*, 547 S.W.2d 196, 204 (Mo.App.1977); *McDougall v. Castelli*, 501 S.W.2d 855, 859 (Mo.App. 1973). Conversely, *Holian v. Guenther*, 471 S.W.2d 457, 459 (Mo.1971), held that the dominant owner was not entitled to an unrestricted roadway where gates were present during the prescriptive period.

In *McDougall* and *Carpenter–Union Hills Cemetery*, the courts said the roadway had always been open and "unobstructed." "Obstruct" is defined by *Webster's Third New International Dictionary* (1976) as "to block up: stop up or close up: place an obstacle in or fill with obstacles or impediments to passing (traffic): to be or come in the way of: ... impede, retard." The concept of "obstruction" applies more clearly to "gates or bars" than to a cattle guard which, if properly maintained, does not prevent continuous movement of a vehicle. None of the Missouri cases cited by Plaintiffs discussed the relative effect of a cattle guard, as opposed to a gate or bar, on the use of the lane.

The trial court in the instant case held that the existing cattle guard, if properly maintained and repaired, does not materially impair or unreasonably interfere with the use of the roadway by Plaintiffs. In holding that Defendants are entitled to maintain the existing cattle guard, it referred to *Massee v. Schiller*, 243 Ark. 572, 420 S.W.2d 839 (1967). In *Massee*, plaintiffs owned a 40–acre tract immediately south of defendants' property. An easement for a roadway had previously been determined to exist across the south 20 feet of defendants' property. The issue was whether defendants could install and maintain cattle guards at the west and east ends of the roadway easement. In permitting defendants to do so, the Supreme Court of Arkansas held that the cattle guards did not unreasonably interfere with the rights of the dominant owner to use the roadway easement.

The court in *Massee* and Defendants in the instant case refer to Section 481 of *Restatement of the Law, Property—Servitudes*. It states:

> The possessor of land subject to an easement created by prescription is privileged, as against the owner of the easement, to make such uses of the servient tenement as are not incompatible with the use authorized by the easement.

The Comment to that section further states that "the possessor of the servient tenement is privileged to make all uses of his land which do not interfere with the use authorized by the easement" and that neither the

possessor of the servient tenement nor the owner of the property "shall unreasonably interfere with the use of the land by the other." In following that concept, the *Massee* court said:

> Where the owner of land has a right to use it, subject to the prescriptive right of another to travel a well defined designated route across the land, some degree of inconvenience is to be expected and tolerated in the exercise of these overlapping rights, and the conflicts that arise in the exercise of such rights, are measured by reasonableness of interference of one with the other.

*Id.* 420 S.W.2d at 843. The principle found in the *Restatment* and *Massee* are consistent with *Stickle v. Link,* 511 S.W.2d 848, 857 (Mo.1974), where the court said:

> As the owner of the servient estate, Miss Link has the "right of full dominion and use of the [roadway] except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant easement."

A natural extension of Plaintiffs' argument (since there was no cattle guard during the prescriptive period, none should be allowed now) would result in Defendants' being unable to do anything within the area of the easement which was not done during the prescriptive period, regardless of whether it unreasonably interfered with Plaintiffs' use of the lane.[2] This is inconsistent with the concept that "[u]nder prescription an exclusive right of possession can not be established but only a qualified right for a particular purpose." *Riggs v. City of Springfield,* 126 S.W.2d at 1149. In addition, an easement by prescription is distinguished from adverse possession in that prescriptive rights deal with use, not possession, of the property in question. *Curran v. Bowen,* 753 S.W.2d 940, 943 (Mo.App.1988). The inflexible rule suggested by Plaintiffs does not accommodate the principle that the servient owner

retains dominion and use of the property except to the extent necessary to permit the use acquired by the dominant owner.

Plaintiff Donald Swaggerty described the following ways in which he believed that cattle guards would impede travel or hinder maintenance of the road: snow removal and the spreading of gravel on the road would be more difficult; he would not be able to grade the road; he believed they would decrease the value of his property; his wife cannot walk across the cattle guards because of her bad knees; cattle on the roadway would be an inconvenience; and it is necessary to slow down before crossing cattle guards. He also said that he did not have adequate room to make the turn from the county road with his 30-foot travel trailer.[3]

Defendant R.S. McKinzey, on the other hand, testified that the cattle guard is 16-feet wide whereas the traveled portion of the roadway is nine feet; it is located 90 feet from the entrance of the lane onto the county road; and it has a warranty that it will accommodate any legal load limit. He also testified that an 18-wheeler can make the turn from the county road onto the lane; snow can be graded onto the cattle guards; and he had fixed a place next to the cattle guard where a person could walk around it. Thus, there was evidence to support the trial court's finding in the instant case that the existing cattle guard did not unreasonably interfere with Plaintiffs' right to use the road.

Accordingly, we believe the trial court in the instant case correctly decided the case based on the reasonableness of any interference of Plaintiffs' use of the lane and that its decision was supported by substantial evidence. The judgment in the instant case, however, also enjoined Defendants from "erecting or maintaining any fences, barriers, gates, panels, cattle crossings or other obstructions across the roadway, except the one

---

2. For instance, if Defendants or their predecessors had not used the lane to obtain access to their property during the prescriptive period, an extension of Plaintiffs' theory could result in that use also being excluded in the future.

3. There was no evidence, however, that the road had been used for travel trailers during the prescriptive period. No issue is raised about whether this would be a different or greater use of the prescriptive easement than the use under which it was gained. See *Lacy v. Schmitz,* 639 S.W.2d 96, 100 (Mo.App.1982).

cattle guard with panels presently installed." All parties treat this as prohibiting the construction of an additional cattle guard at the east end of the lane. There was no evidence that an additional cattle guard would have any different effect on Plaintiffs' use of the roadway than the one at the west end. We hold, therefore, that the trial court's order, to the extent that it prohibits the installation of another cattle guard like the one existing on the west end, was unsupported by the evidence and must be reversed. An additional cattle guard, if constructed by Defendants, however, would be subject to the same qualifications and conditions imposed by the trial court with reference to the existing cattle guard. Therefore, Defendants would have the duty to maintain, repair and replace the cattle guard so as not to unreasonably interfere with, prevent, or hinder Plaintiffs, their heirs, grantees or assignees from using the road.

## THE ISSUE CONCERNING THE WIDTH OF THE EASEMENT

■ Defendants also contend that the trial court erred in declaring that the prescriptive easement was 24 feet wide. The extent of a prescriptive easement is determined by the character and extent of its use during the prescriptive period. *Tadlock v. Otterbine*, 767 S.W.2d 366, 368 (Mo.App.1989).

■ The only evidence in the instant case concerning the dimensions of the traveled portion of the lane was from Defendant R.S. McKinzey, who testified that it was nine feet wide. The lane had two culverts [4] and also had ditches on both sides, but there was no testimony about the distance from ditch to ditch. Both the existing cattle guard and the gate into Plaintiffs' property were 16 feet wide. There was evidence that the property owner on the north side of Defendants' property had installed a new fence on the property line in 1978 (north fence). Although the photographic evidence shows a separation between the north fence and the north track of the lane, there was no evidence quantifying that distance. Some remnants of an old

fence south of the road (south fence) also existed. The testimony indicated that the distance from the north fence to the south fence varied from 24 to 30 feet. The photographs also show trees and brush undergrowth near the south side of the lane at some locations. There was evidence that the distance from the north fence to the trees on the south side of the lane was 18 feet or less.

The evidence indicated that the lane had stayed substantially the same throughout the years, as indicated in the photographs which were introduced, and that the area covered by the two tracks was the only portion of the land which had been used for ingress and egress. This is consistent with evidence that the lane was so narrow that if the gate at the east end was locked, motorists had to back out to the county road rather than being able to turn a vehicle around.

There was no evidence that any portions other than the two tracks had been used for vehicular travel or that an area beyond the ditches had been used. We conclude, therefore, that the trial court's judgment granting a prescriptive easement over the area described as 12 feet on either side of the center of the traveled portion of the roadway is unsupported by the evidence. Accordingly, we must remand this case for the taking of additional evidence to determine the area actually used for the roadway and ditches during the prescriptive period.

The portion of the judgment enjoining the erection and maintenance of an additional cattle guard and setting the easement at 24 feet wide is reversed. In all other respects, the judgment is affirmed. The case is remanded for further proceedings not inconsistent with this opinion.

PREWITT, J., concurs.

CROW, J., concurs in part, dissents in part, and files opinion.

CROW, Judge, concurring in part and dissenting in part.

I concur in the principal opinion except the portion allowing Defendants to maintain the existing cattle guard and construct another.

---

4. The judgment refers to the existence of two 16–foot culverts, but our review of the record indicates that the only evidence concerning that sub- ject was to one 16–inch culvert and one which was 10 inches—apparently referring to the diameter.

As reported in the principal opinion, throughout the time the prescriptive easement was ripening, there was never a gate or cattle guard on the road except the gate maintained by Plaintiffs and their predecessors at the east end of the road where it enters Plaintiffs' property. Additionally, there was uncontradicted evidence that since 1963, no cattle had been pastured on Defendants' land. There was also uncontradicted evidence that some time before 1963, a fence had existed south of the road and cattle had been pastured south of the fence, which kept them off the road. That fence has since "deteriorated away."

Now, Defendants want to pasture cattle on their land. Obviously, Defendants could build a fence along the old fence line south of the road, thereby enclosing their cattle and keeping them off the road. However, it is inferable that the cattle guard (or guards) cost less than a new fence.

In *Huter v. Birk,* 510 S.W.2d 177, 183 (Mo.1974), the court held:

"We are of opinion that under modern conditions the better rule is that which prohibits the servient owner from erecting gates or bars across the road where the owner of the dominant estate has used said road uninterruptedly under an adverse claim of right for [the period of prescription], or more, without gates or bars."

In *Massee v. Schiller,* 243 Ark. 572, 420 S.W.2d 839 (1967), discussed in and relied upon by the principal opinion, there was a dissent embraced by three judges. It said, in part:

"... in purchasing or improving property one should be entitled to rely on reasonable permanence of the access as it exists. Having to drive through a cow pasture to reach a proposed home site would materially affect the desires of many people to make substantial improvements. Therefore, in my opinion, today's decision will materially reduce the market value of the property of many of our citizens, who through the years have come to rely on roads acquired by prescription."

*Id.* 420 S.W.2d at 847.

The principal opinion saddles Plaintiffs with the inconvenience and the diminution in value of their property that will inevitably result from the cattle guard (or guards) and the presence of cattle on the road. No such burdens existed throughout the period that the prescriptive easement was ripening. The principal opinion therefore erodes the prescriptive easement at the expense of the owners of the dominant estate. To me, that is contrary to *Huter,* 510 S.W.2d at 183.