Cite as 2022 Ark. App. 354

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-21-229

|  |  |
|---|---|
|  | **Opinion Delivered** September 28, 2022 |
| JAMES S. BRANSCUM and COLETTE R. BRANSCUM | APPEAL FROM THE PERRY COUNTY CIRCUIT COURT |
| APPELLANTS\CROSS-APPELLEES | [NO. 53CV-19-46] |
| V. | HONORABLE VANN SMITH, JUDGE |
| JOHN NELSON AND WHITNEY BUTTS | |
| APPELLEES\CROSS-APPELLANTS | REVERSED ON DIRECT APPEAL AND REMANDED WITH INSTRUCTIONS; AFFIRMED ON CROSS-APPEAL |

## BRANDON J. HARRISON, Chief Judge

The "Jay English place" is an Edenic parcel south of the Fourche LaFave River in western Perry County, bordered on the east and south by the Ouachita National Forest. Jay English bought it in 1937 and owned most of it through 1992. James Branscum acquired it in 2003. Every soul in Perry County has visited, it seems. There is a river access where boats can be launched. To reach the English place (and the river), Branscum and the public use a road of unknown age that intersects Forest Service Road Y09 on federal land.

Before the road reaches the English place, it crosses the former "McNeal place," now owned by appellee/cross-appellant John Nelson. Nelson gated the road after he bought the

property in July 2016. Branscum was not satisfied with a key.[1] He sued in June 2019 to recognize a prescriptive easement and asked for an order to remove the gate.

At a bench trial split over two days in September and November 2020, the circuit court heard extensive and undisputed testimony that the public had used the road for at least seventy-two years to reach the English place—and the federal land past the Nelson place.

In an order entered on 31 December 2020, the court found the public use was open and notorious, not permissive, and that the road was "clearly identifiable by the exhibits introduced at trial and the testimony of the various witnesses" and that Nelson was "well aware" of the road when he bought the property. The court recognized a prescriptive easement on behalf of Branscum and the "citizens of Perry County, Arkansas," that is, the public. In most respects, the order was all Branscum might have hoped for.

In paragraph 44, however, the court ruled:

> The Court understands that the Defendants wish to improve their acreage. To that end, the Defendants are free to relocate the road on their property so as to allow the Plaintiffs and citizens of Perry County to travel to the west side of the property and connect with the existing road. In other words, if the Defendants elect to move the road, they are free to do so. The Plaintiffs are responsible for providing a legal description for the easement at their expense and having it recorded. The legal description must be reviewed and approved by the Defendants. If the Defendants elect to relocate the road, then they shall notify the Plaintiffs within ninety (90) days of this Order as to the location so the legal description can be determined.

And the court did not order Nelson to remove the gate.

In a timely motion under Arkansas Rules of Civil Procedure 50(b) and 52(b), Branscum moved to strike paragraph 44, chiefly because Nelson had not requested that remedy in the

---

[1]Nelson gave James Branscum a key. Branscum's wife CoLette Branscum and Nelson's wife Whitney Butts were joined because they have a dower interest in the respective properties.

pleadings or at the bench trial, which had included no proof about relocation either. Branscum also asked the court to order Nelson to remove the obstructions from the road and to find that the road was twenty-five feet wide. In a supplemental brief, he cited cases including *Massee v. Schiller*, 243 Ark. 572, 420 S.W.2d 839 (1967).

Nelson responded that the circuit court was sitting in equity, and its ability to fashion an appropriate remedy was "limited only to the extent that the remedy must be reasonable and justified by the proof." The circuit court did not rule on Branscum's motion; he filed a timely notice of appeal from the 31 December 2021 final order, identifying the posttrial motion in the notice. Nelson filed a timely notice of cross-appeal. Because Branscum's arguments on direct appeal are moot if no prescriptive easement exists, we address Nelson's cross-appeal first.

I. *Whether a Prescriptive Easement Exists on Nelson's Land*

Nelson argues that the circuit court erred in recognizing a prescriptive easement on his land. We recited the standard of review in prescriptive-easement appeals and what may be the fullest statement of the elements for creating a prescriptive easement under our law in *Five Forks Hunting Club, LLC v. Nixon Family Partnership*:

> This court reviews equity matters de novo on the record but will not reverse a finding of the lower court unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. In reviewing a circuit court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. Disputed facts and determinations of witness credibility are within the province of the fact-finder.
>
> . . . A prescriptive easement may be created only by the adverse use of privilege with the knowledge of the person against whom the easement is claimed or by use so open, notorious, and uninterrupted that knowledge will be

presumed, and the use must be exercised under a claim of right adverse to the owner and acquiesced in by him.

2019 Ark. App. 371, at 13–14, 584 S.W.3d 685, 694 (citations omitted).

This appeal turns on Nelson's novel interpretation of the requirement that an adverse use be exercised "under claim of right." He does not deny the public has used the road openly, adversely, or long enough to establish a prescriptive easement. He argues they have no "claim of right" because they are scofflaws: the road enters Nelson's land from federal land administered by the U.S. Forest Service (Forest Service), and the Forest Service's motor-vehicle-use map for the Jessieville-Winona-Fourche Ranger District ("MVUM") does not depict the road as a route motor vehicles can use. Further, he argues that prescriptive easements cannot be acquired over federal land; and he suggests the circuit court wrongly inferred that the Forest Service's acquiescence "over 70 years to public use of the road" created a claim of right.[2] Ultimately, the circuit court rejected Nelson's argument, finding that whether the public should be driving across federal land was between the drivers and the Forest Service.

We agree with the circuit court. First, though any distinct role the "under claim of right" requirement plays in our prescriptive-easement cases is elusive, we don't believe it can require, as Nelson seems to assume, that the user has a right to make the use or that a prescriptive use does not violate a legal duty. Prescriptive easements are commonly established by trespass, which

----

[2]The circuit court noted that Nelson was unable to provide witnesses from the Forest Service to support his argument. He abandoned an attempt to subpoena testimony from Jake Cowart, a Forest Service employee, after the United States threatened to remove the case to federal court. The circuit court excluded Cowart's declaration as hearsay. Nelson does not challenge that ruling on appeal. Much of the record consists of conjecture by the parties, witnesses, and counsel about what the Forest Service did or did not allow.

is illegal. *E.g.*, Ark. Code Ann. § 5-39-203(a)(2) (Supp. 2021). Scholars have suggested the "claim of right" element means only "that the user must not act in such a way as to lead the owner to believe that no adverse claim is asserted" and "may also mean that the user acts as the owner of a servitude would act, as opposed to the way a casual trespasser would act." Restatement (Third) of Property, Servitudes § 2.16(f) (Westlaw current through May 2022). Stated otherwise, use under claim of right "means nothing more than a use as of right, that is, without recognition of the right of the landowner." 28A C.J.S. *Easements* § 43, Westlaw (database updated Sept. 2022). (It is akin to the "hostility" element in an adverse-possession claim.) We do not need to decide whether those scholars are correct because Nelson has offered no convincing authority or argument that regulatory restrictions on neighboring parcels should affect a property right created in his property under Arkansas law.

The MVUM in evidence, dated 2019, does not suggest the circuit court erred on this point either. The paper map exhibit provides that its motor-vehicle-use designations apply "only to National Forest System roads, National Forest System trails, and areas on National Forest System lands." "National Forest System lands" is defined in 36 C.F.R. § 290.2 (2021) as "all national forest lands reserved or withdrawn from the public domain, acquired through purchase, exchange, or donation, national grasslands and land utilization projects, and other lands, waters, or interests administered by the Forest Service." Consistent with that description, the map legend indicates that "National Forest System Lands" are shaded light gray, but "Non–National Forest System Lands within the National Forest" are white.

Nelson's parcel is white. So setting aside whether the map prohibits driving *to* Nelson's land, it does not prohibit driving *across* his land, which is where the circuit court recognized a

5

public easement. Whether an easement exists on Nelson's land matters even if the Forest Service generally prohibits driving to Nelson's land. First, the Forest Service can grant exceptions to that general prohibition. Branscum has applied for a special-use permit to drive on either side of Nelson's land.[3] As Nelson conceded, the Forest Service does not decide who can cross Nelson's land. If there is a public easement, everyone can.

Moreover, the MVUM does not restrict *nonmotorized* travel. And nonmotorized travel can give rise to a prescriptive easement. *See Armstrong v. McCrary*, 249 Ark. 816, 818, 462 S.W.2d 445, 446 (1971) (prescriptive use of driveway included ten-year period where a family walked and rode bicycles because they did not own an automobile); *Five Forks Hunting Club, LLC*, 2019 Ark. App. 371, at 17, 584 S.W.3d at 696 (prescriptive easement to travel along a ditch by boat). There was undisputed evidence of nonmotorized use of the road: Jay Rankin testified he had walked it and ridden horses there since 1984.

II. *Relocating the Road and Removing the Gate*

On direct appeal, Branscum argues that the circuit court had no authority to allow Nelson to relocate the road because the issue was not pleaded or raised, and because an established easement cannot be moved by either the landowner or the easement holder without the other's consent.

Although Branscum's legal arguments have expanded somewhat from his posttrial motion, we entertain them because we agree that relocation was never raised in the circuit court. Consequently, he had no prior opportunity to object. *See Olson v. Olson*, 2014 Ark. 537, at 7–

---

[3]Nelson himself had not received a special-use permit to drive the segment between Forest Service Road Y09 and his property line.

8, 453 S.W.3d 128, 133 (holding that a party who has no notice or opportunity to object to a circuit court's ruling does not need to file a posttrial motion to preserve the point for appellate review).

Neither party's authorities on the relocation issue are perfectly on point. Branscum cites authority that an easement whose location has been fixed cannot be moved except by agreement. Nelson characterizes the road, by contrast, as an "undefined easement" whose "definition" came from testimony of witnesses who couldn't identify its exact location.[4] He argues that the circuit court could relocate the easement (or let Nelson relocate it) under the principle that an "undefined right of way" must be reasonable to both the dominant and servient estates. *E.g.*, *Carroll Elec. Coop. Corp. v. Benson*, 312 Ark. 183, 188, 848 S.W.2d 413, 416 (1993).

Nelson relies on *Fulcher v. Dierks Lumber & Coal Co.*, 164 Ark. 261, 261 S.W. 645 (1924). That reliance is misplaced because *Fulcher* illustrates that the easement at issue here is not "undefined" in the necessary sense. In *Fulcher*, a lumber company proposed to build a railway pursuant to a one-hundred-foot right of way it had purchased twenty years earlier from the landowner's predecessor. *Id*. at 265, 261 S.W. at 646. The landowner argued that the grant was void because the deed included no description of the right of way. *Id*. The court rejected that argument. It quoted from an earlier decision where it had held that a right of way granted "through and over said lands situated as aforesaid" with no specified width was "until located, a

---

[4]To the extent Nelson contends there was doubt about the location of the easement, the record does not support him. The circuit court found the road was clearly identifiable and that Nelson was "well aware" of the road when he bought his property. The witnesses identified the easement by testifying they had used the road to the English place that is now gated about 300 feet off Forest Service Road Y09. The road's course is described in a centerline survey in evidence, whose accuracy Nelson did not dispute, and depicted in satellite images Nelson himself introduced.

floating right exercisable over any portion of the land within the limit or width specified." *Id*. at 271–72, 261 S.W. at 648 (quoting *St. Louis, Iron Mountain & S. Ry Co. v. Stevenson*, 125 Ark. 357, 361, 188 S.W. 832, 833 (1916)). Even in that setting, however, "the grantee of an easement or right of way has the right to determine the exact location of such easement if the grantor fails to do so," and it "cannot thereafter be redesignated at a different location without another grant." *Bradley v. Ark. La. Gas Co.*, 280 Ark. 492, 496, 659 S.W.2d 180, 182 (1983). Allowing the owner of a servient estate to relocate a right of way after its location has become fixed by use is clear error. *Id*.

These authorities do not directly apply because a prescriptive easement is created by adverse use, not by grant. "In the case of an easement by prescription both its creation and extent are ascertained from the adverse use of the property over a long period of time." *Jordan v. Guinn*, 253 Ark. 315, 322, 485 S.W.2d 715, 720 (1972). But we do not think a less stringent standard could apply to attempts to relocate a prescriptive easement, and the circuit court's attempt here was clear error. The record included abundant evidence that the road has remained in passable condition, despite little maintenance, throughout the decades Nelson's predecessors acquiesced in the public's use. We discern no evidence of any convenient or appropriate route between the endpoints specified in the order other than the road.

For that matter, it is not clear that Nelson's goals in gating the road would be served by relocating the road without a gate. Nelson testified he kept a sickle plow, a drag for food plots, deer stands, and cameras on the property and would have to move them if the gate were open for fear they would be stolen. Our supreme court has held that a landowner could install cattle guards in an abandoned roadway over which a neighbor had a prescriptive easement, though

8

none were present when the easement was created, because the guards did not unreasonably interfere with the prescriptive use. *Massee v. Schiller*, 243 Ark. 572, 579–80, 420 S.W.2d 839, 843 (1967). Here, unlike the circumstances in *Massee*, there is a public easement. Nelson installed the gate because he "wanted to restrict the access of the general public," contravening the only right that easement conveys. The gate, and any other obstructions on the road, must be removed.

III. *Finality*

Finally, we have confirmed we have jurisdiction to decide this appeal despite at least two potential finality issues in the circuit court's order. First, the relocation provision left unclear whether Nelson would move the road and, if so, when or where. It arguably invited future disputes—if Nelson chose to relocate the road but refused to approve the Branscums' description, for one. But the order did not contemplate that the parties would return to the court for further judicial action. So it does not create a finality issue. *See Moore v. Moore*, 2016 Ark. 105, at 3–4, 486 S.W.3d 766, 770.

Second, the order does not include a legal description of the prescriptive easement. In *Petrus v. Nature Conservancy*, our supreme court held that an order resolving the right to a railway easement, which contemplated a future survey to resolve specific boundary lines, was not a final, appealable order. 330 Ark. 722, 957 S.W.2d 688 (1997). The court held that "any such landowner dispute must be resolved by fixing and defining boundary lines." *Id*. at 726, 957 S.W.2d at 689–90. We have extended that requirement to orders that recognize prescriptive easements. *Johnson v. Jones*, 64 Ark. App. 20, 28, 977 S.W.2d 903, 907 (1998).

Two lines of cases have followed. Where an order does not contemplate further proceedings, and the record supplies the missing description, we have addressed the merits and

9

remanded with instructions to include it. *E.g.*, *Garringer v. Garringer*, 2010 Ark. App. 297, at 1, 374 S.W.3d 769, 770; *Jennings v. Burford*, 60 Ark. App. 27, 35–36, 958 S.W.2d 12, 16–17 (1997) (remanding where decree found that boundary line was a meandering fence "reflected by the Askew survey" to amend the decree to include the survey description). If the record does not include the foundation for that description, we will dismiss the appeal without prejudice. *Dohle v. Duffield*, 2011 Ark. App. 135; *Strange v. Mary K. Reed Trust*, 2012 Ark. App. 592.

Here, the court found that the road "dissects the Defendants' property" and that it is "clearly identifiable by the exhibits introduced at trial and the testimony of the various witnesses[.]" Only one road dissects Nelson's property, and there is no room for genuine doubt it is the road whose centerline survey was introduced without objection as plaintiffs' exhibit 31. However, that survey does not include a width.

Witnesses testified the road was wide enough that a truck could be driven on it without scratching the sides, and two cars could pass when they met. Kenneth Howard testified that the gate across the road was twenty-five feet from post to post. Branscum requested a finding that the road was twenty-five feet wide in his Rule 52(b) motion. The record would have supported that finding if the circuit court had made it; but it does not compel the conclusion that the circuit court's denial of the request was error.

We nonetheless conclude that the existing record permits the circuit court to supply this finding without further proceedings. As the supreme court observed in *Jordan v. Guinn*, both the creation and extent of an easement by prescription are ascertained from adverse use of property over time. 253 Ark. at 322, 485 S.W.2d at 720. We have affirmed, without raising finality, where a decree described a prescriptive easement as follows:

10

> The Court finds that the prescriptive use of the road is that which has been used over a period of time as shown by the map as set out on plaintiffs' Exhibit 17, and continuing upon its present course. The Court further finds that the width of the road is the width that has been established by usage and the defendants are enjoined from taking any action that would narrow the width of the road.

*River Bar Farms, L.L.C. v. Moore*, 83 Ark. App. 130, 133, 118 S.W.3d 145, 147 (2003) (appeal of venue determination). There is authority from other states that, where a centerline is provided or a right-of-way can be located from a map, the width of an easement need not be determined. *See Steahr v. Clark*, 535 S.W.2d 39, 41 (Tex. Civ. App. 1976) ("It appears from the evidence that the roadway is not of uniform width throughout its length. It was not necessary that the roadway be described by metes and bounds, if described in some other definite way; nor is it required that a specific width be alleged."); *Elias v. Horak*, 292 S.W. 288, 290 (Tex. Civ. App. 1927) ("In the instant case a survey of a line down the center of the roadway was made and the field notes thereof set out in detail, definitely locating this line on the ground. It was not necessary to allege a specific width for the road."). In any event, our opinion in *Johnson* does not indicate that we remanded for the circuit court to "amplify and correct the decree" because a width was unambiguously determined in the record. *See* 64 Ark. App. at 28, 977 S.W.2d at 907.

★ ★ ★

Nelson is ordered to remove the gate and any obstructions along the road identified in plaintiff's exhibit 31 within thirty days of our mandate. We remand to the circuit court with instructions to amend the 31 December 2021 order to include a description of Nelson's parcel, the centerline description in the survey introduced as plaintiffs' exhibit 31, and a description of the width or extent of that roadway consistent with the record and this opinion.

Reversed on direct appeal and remanded with instructions; affirmed on cross-appeal.

11

WHITEAKER and MURPHY, JJ., agree.

*Branscum Law Offices*, by: *Herby Branscum, Jr.*, for appellants/cross-appellees.

*James, House, Swann & Downing, P.A.*, by: *Richard C. Downing*, for appellees/cross-appellants.