Albert and Marnette HANNA  *v.*  James and Elizabeth ROBINSON

CA 03-918                                                    167 S.W.3d 166

Court of Appeals of Arkansas
Division III
Opinion delivered May 12, 2004

*Eugene D. Bramblett*, for appellants.

*Ian W. Vickery* and *Robin J. Carroll*, for appellees.

ROBERT J. GLADWIN, Judge. Appellants appeal from an order granting appellees an easement by implication in appellants' property. We affirm in part and reverse and remand in part.[1]

Because the transactions in this case were conducted by appellant Albert Hanna and appellee James Robinson, we will refer to the parties as Hanna and Robinson for the sake of convenience. Both parties own multi-story buildings in the city of El Dorado. Robinson's building has a first floor, a mezzanine, and a second floor, and it houses Robinson's delicatessen and catering service. Hanna's building is located across an alley to the south. It has two stories, with a dress shop on the first floor.

The two buildings are connected by a four-foot-wide hallway that runs between the mezzanine of Robinson's building and the second floor of Hanna's building. Two ten-foot-by-ten-foot rooms are located on each side of the hallway. When the hallway reaches Hanna's second floor, it empties into two more rooms, which we will refer to as the loft rooms. In addition, the first floor of Hanna's building houses the elevator equipment room for Robinson's elevator. The room is located at the northeast corner of the dress shop and encloses the elevator's electrical and hydraulic systems.

The buildings were once owned by James Dougherty. At some point in the 1980s, he rented the northernmost building (now owned by Robinson) to Ray Luttrell, whose tenancy ended in 1989. Luttrell testified that he used the hallway rooms for an office and the loft rooms for storage. He also said that he had unrestricted access to the elevator equipment room in the other building and in fact had a key for that purpose. There is no evidence of who occupied the building between 1989 and 1992, if anyone. In April 1992, Robinson purchased the building. James Robinson testified that, at the time that he made the purchase, the hallway rooms were being used as an office. He said that he understood the purchase to include the hallway and loft rooms, although he admitted that the property description in the deed did not include those rooms. Nevertheless, from the day he moved in,

---

[1] A prior appeal in this case was dismissed for lack of a final order. *See Hanna v. Robinson*, No. CA02-1157 (Ark. App., June 4, 2003).

he occupied the hallway rooms for office space and the loft rooms for storage. The hallway rooms had a toilet, sink, shower, washer/dryer, and hot-water heater, all of which Robinson added as improvements between April and August 1992. Robinson further testified that, when he purchased the building in 1992, the elevator was working. He said that he has always had unrestricted access to the elevator equipment room on the other building's first floor for the purpose of maintaining and servicing the elevator.

In 1999, Hanna became interested in purchasing the southernmost building from Dougherty. Prior to the sale, he commissioned a survey, which showed that his property would begin at the southern end of Robinson's building and continue southward across the alley, encompassing the hallway rooms, the loft rooms, and the elevator room. While inspecting the property prior to purchase, Hanna noticed that Robinson was using the hallway rooms and the loft rooms to store what Hanna called "junk." He was also aware that the elevator equipment room in the northeast corner of his first floor was for Robinson's elevator.

At some point after Hanna bought the building in October 1999, he and Robinson had a discussion in which Robinson offered to rent the hallway and loft rooms from Hanna for $100 per month. Hanna was agreeable and sent a letter to Robinson confirming the arrangement. However, Robinson never made any rental payments to Hanna and testified that he changed his mind immediately after talking with Hanna, although he did not communicate that to Hanna. Robinson explained that he offered to rent the hallway and loft rooms because he was caught off guard by Hanna's claim to them and was afraid he would lose the use of the areas.

James Dougherty testified that, when he sold the Robinson building, he did not consider the hallway rooms and the loft rooms as being included in the purchase, although he did tell Robinson that he could use the hallway rooms. Dougherty said that he was not even aware that the loft rooms existed. As for the elevator room, Dougherty's real-estate agent, Scott Ellen, testified that Dougherty had asked him to make it clear to any occupants of the southernmost building that occupants of the northernmost building had twenty-four-hours-a-day access, seven days a week to the elevator equipment room on that building's first floor.

Controversy eventually arose over Robinson's use of the hallway, loft, and elevator equipment rooms, and he sued Hanna on February 28, 2001, seeking to quiet title to and establish

easements in the rooms. Following a trial on April 4, 2002, the trial court granted Robinson an easement by implication in all five rooms. Hanna now argues that the trial court erred in granting the easements.

■ We review easement cases *de novo. Diener v. Ratterree,* 57 Ark. App. 314, 945 S.W.2d 406 (1997). However, we will not reverse the trial judge's findings unless they are clearly erroneous. *Id.* The person asserting the easement has the burden of proving the existence of the easement. *See Kennedy v. Papp,* 294 Ark. 88, 741 S.W.2d 625 (1987); *R&T Props. v. Reyna,* 76 Ark. App. 198, 61 S.W.3d 229 (2001).

■ ■ An easement by implication arises where, during unity of title, a landowner imposes an apparently permanent and ·obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably necessary for the enjoyment of that part of the property favored by the servitude. *See Manitowoc Remfg. Co. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991); *Kahn v. Cherry,* 131 Ark. 49, 198 S.W. 266 (1917); *Kralicek v. Chaffey,* 67 Ark. App. 273, 998 S.W.2d 765 (1999). In order for such an easement to be established, it must appear not only that the easement was obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property, the term "necessary" meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Kennedy v. Papp, supra. See also Greasy Slough Outing Club, Inc. v. Amick,* 224 Ark 330, 274 S.W.2d 63 (1954).

Hanna's first two arguments are that an easement in the rooms was neither 1) apparently permanent nor 2) reasonably necessary. However, we do not reach those arguments as they pertain to the hallway and loft rooms because we are convinced by Hanna's third argument, in which he contends that the grant of an easement improperly excluded him from his own property.

■ ■ An easement is a nonpossessory interest in the land of another. *See* Jon W. Bruce and James W. Ely *The Law of Easements & Licenses in Land,* § 1.1 (2001); *Restatement (Third) of Property, Servitudes,* § 1.2 (2000); 28A.C.J.S. *Easements,* § 5 (1996). Traditionally, an easement involves a grant of a right-of-way over the land of another or the right to use another's land for a specific purpose, consistent with the other's ownership. *See generally Black's*

*Law Dictionary* 527 (7th ed. 1999); *Black's Law Dictionary* 457 (5th ed. 1986). Hanna is the undisputed owner of the building that houses the hallway and loft rooms; however, Robinson's use of the rooms exceeds the scope of what is ordinarily considered an easement. He is not merely utilizing them for passage, access, or other limited, nonpossessory activities. Instead, he is using the rooms to their full extent as offices and storage areas, exclusive of any rights of Hanna. As a result, Hanna has been, practically speaking, divested of his possessory and ownership interest in the rooms; in fact, the interest awarded to Robinson is tantamount to a grant of fee simple by adverse possession.

■ Under the circumstances of this case, we conclude that the easements in the hallway and loft rooms are inconsistent with Hanna's ownership and possessory rights. We therefore reverse the · trial court's grant to Robinson of an easement in those rooms.[2]

■ The same reasoning does not apply to Robinson's easement in the elevator equipment room, however. Hanna admits in his reply brief that he has equal access to the elevator room. Further, Robinson's easement in that room is for the specific purpose of maintenance and repair of the elevator and consequently is not inconsistent with Hanna's ownership or possessory interests. As a result, we do not invalidate Robinson's easement in the elevator equipment room under this point. We therefore proceed to consider the propriety of that easement under Hanna's first two issues, which are whether the easement was apparently permanent and whether it was necessary.

■ Whether an easement is necessary and apparent are ordinarily questions of fact. *See Diener v. Ratterree, supra.* As to necessity, the trial court found that Robinson's elevator was used ten to twenty times a day; that it made Robinson's second floor handicapped-accessible; and that, because the elevator equipment was too large to fit through the door of the elevator room, any effort to relocate it from Hanna's building to Robinson's building would entail an alteration of one or the other. Hanna argues that Robinson failed to prove that his use of the room was necessary as opposed to merely convenient.

---

[2] We note that, in its order, the trial court expressed concern that its ruling would grant Robinson exclusive use of the subject rooms.

By focusing on whether the easement was necessary to Robinson's current business operation, the trial court and the parties have failed to recognize that an easement by implication arises at the time of the conveyance in which the common owner severs one of his parcels. Thus, the necessity for the easement must have existed at the time of severance. See *Diener v. Ratterree, supra. See also* Bruce and Ely, *supra*, at § 4:22; 28A C.J.S. *Easements*, § 69. Further, the apparently permanent nature of the easement must be in existence at the time of common ownership because the existence of the easement depends on the common owner's use. Bruce & Ely, *supra*, at § 4:18. *See also Kahn v. Cherry, supra*, where the elements of an implied easement are recited as "where, *during unity of title, an apparently permanent and obvious servitude is imposed....*" *Id*. at 55, 198 S.W. at 268 (emphasis added).

The reason for the above requirements is that an implied easement begins when a parcel of land is owned by one person, such as Dougherty in this case. During the common ownership, the owner imposes a servitude on one part of his land in favor of another part. At that point, there is no actual easement since one person still owns all the land; rather, there is a quasi-easement. *Black v. Van Steenwyk*, 333 Ark. 629, 970 S.W.2d 280 (1998); *Manitowoc Remfg. Co. v. Vocque, supra*; Bruce and Ely, *supra*, at § 4:15. When the owner conveys one of the parcels, *i.e.*, severs his estate, an implied easement is then created. *Manitowoc Remf'g. Co. v. Vocque, supra; Kahn v. Cherry, supra*; Bruce and Ely, *supra*. The nature of the easement corresponds to the benefits and burdens existing at the time of the severance. *See Kahn v. Cherry, supra*. Thus, the question of whether an easement is apparently permanent and necessary to the enjoyment of the dominant tenement must be determined at the time of severance, for that is when the easement comes into existence.

Applying those principles to the facts of this case under our *de novo* review, we uphold the trial court's grant of an implied easement in the elevator equipment room. There is evidence that, at the time of severance, an easement in that room was necessary to the enjoyment of Robinson's building. Certainly the very existence of an elevator equipment room in a building that is separate and apart from the elevator itself indicates a necessity for an easement in the equipment room and in a pathway to reach it. Also, Dougherty stated in a January 1992 pre-sale letter

to Robinson that the second floor of the building was served by an elevator, and Ray Luttrell testified to using the elevator during his tenancy. Further, there was evidence that both Luttrell and Robinson had a key to enter the other building for the purpose of reaching the elevator room. Finally, real estate broker Scott Ellen testified that Dougherty had been adamant that any tenants in the other building be made aware that the occupants of the Robinson building had the right to access the elevator room on a round-the-clock basis.[3] All of these factors are evidence that, at the time of severance, Dougherty intended that the Robinson property should be served by an easement in the elevator room and that such an easement was necessary to the enjoyment of the Robinson building.

These same factors support our conclusion that the easement was apparently permanent. The room was used by Luttrell during his tenancy and he had unrestricted access to it; Robinson was given a key with access to the room; and the elevator was in one building and its equipment in another. Further, there was evidence that the elevator equipment was enclosed in the room in such a way that it would be extremely difficult to move it.

In light of the foregoing, we affirm the trial court's grant of an implied easement in the elevator equipment room, and we reverse and remand the grant of an implied easement in the hallway and loft rooms, with directions to the trial court to enter an order consistent with this opinion.

Affirmed in part; reversed and remanded in part.

BIRD and ROAF, JJ., agree.

---

[3] Although Ellen could not testify to any activities on the property before 1996, his testimony illustrates Dougherty's clear intent that the Robinson building elevator should be served by the elevator equipment room.