2010 Ark. App. 297

**Nellie GARRINGER, Appellant**

v.

**Richard GARRINGER, Appellee.**

**No. CA 09–1245.**

Court of Appeals of Arkansas.

April 7, 2010.

Robert M. Abney, P.A., Des Arc, AR, for appellant.

William Shane Cater, Jacksonville, AR, for appellee.

DAVID M. GLOVER, Judge.

By order entered on June 22, 2009, the trial court determined that appellee, Richard Garringer, had proved that he was entitled to an implied easement over his aunt's, appellant Nellie Garringer's, adjacent property. For her sole point of appeal, Nellie contends that the trial court erred in finding that Richard met his burden of proof. We affirm the trial court's decision, but we remand with instructions for the trial court to amend the order to include a specific legal description of the easement at issue in this case.[1]

### Standard of Review

In reviewing matters concerning easements, this court conducts a de novo review and will not reverse a finding of fact made by the trial court unless it is clearly erroneous. *Orr v. Orr,* 2009 Ark. App. 578, 2009 WL 2877634. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* This court will give due deference to the opportunity of the trial court to judge the credibility of the witnesses and the weight to be given their testimony. *Id.*

### Easement by Implication

An easement by implication arises where, during unity of title, a landowner imposes an apparently permanent and obvious servitude on part of his property in favor of another part and where, at the time of a later severance of ownership, the servitude is in use and is reasonably

---

1. Here, a survey showing the disputed property and surrounding property had been performed and was introduced as an exhibit at trial. When nothing remains to be done, but a trial court's decree does not describe an easement with sufficient specificity so that it can be identified solely by reference to the decree, we may remand for the trial court to amend the decree and provide the easement's legal description. *See Johnson v. Jones,* 64 Ark. App. 20, 977 S.W.2d 903 (1998).

necessary for the enjoyment of that part of the property favored by the servitude. *Hanna v. Robinson*, 86 Ark. App. 180, 167 S.W.3d 166 (2004). In order for such an easement to be established, it must appear not only that the easement was obvious and apparently permanent but also that it is reasonably necessary for the enjoyment of the property, the term "necessary" meaning that there could be no other reasonable mode of enjoying the dominant tenement without the easement. *Id.* An easement by implication arises at the time of the conveyance in which the common owner severs one of his parcels. *Id.* Thus, the necessity for the easement must have existed at the time of severance. *Id.* Further, the apparently permanent nature of the easement must be in existence at the time of common ownership because the existence of the easement depends on the common owner's use. *Id.* Whether an easement is necessary and apparent are ordinarily questions of fact. *Id.; Diener v. Ratterree,* 57 Ark. App. 314, 945 S.W.2d 406 (1997).

The reason for the above requirements is that an implied easement begins when a parcel of land is owned by one person. *Hanna, supra.* During the common ownership, the owner imposes a servitude on one part of his land in favor of another part. At that point, there is no actual easement since one person still owns all the land; rather, there is a quasi-easement. *Id.* When the owner conveys one of the parcels, *i.e.,* severs his estate, an implied easement is then created. *Id.* The nature of the easement corresponds to the benefits and burdens existing at the time of the severance. *Id.* Thus, the question of whether an easement is apparently permanent and necessary to the enjoyment of the dominant tenement must be determined at the time of severance, for that is when the easement comes into existence. *Id.*

### The Property Transfers

Here, the following facts were essentially undisputed: appellee Richard's parents, Clara and Paul Garringer, were the original owners of both parcels of land involved in this case. They are now both deceased. In 1963, Clara and Paul sold approximately one-half of their entire parcel to Paul's brother, John (now deceased), and John's wife, Nellie, who is the appellant in this case. In 1976, Clara and Paul subdivided their remaining parcel into eight lots for each of their eight children, conveying the property to their children but reserving a life estate in it. Richard received Lot 10, which is located at the far northwest corner of the property retained by his parents, and which is essentially landlocked.

### Testimony

Scott Foster, a professional surveyor, testified that he performed a survey for Richard. The survey was introduced as an exhibit at the hearing. Scott pointed out the portion of the survey that represented Richard's eight-acre parcel (Lot 10). He explained that Kinfolks Road is a county road that runs north from Highway 294 for about half a mile and then dead-ends. He testified that there is a private gravel drive located where Kinfolks Road ends, going east over Nellie's property, toward Richard's property. He stated that the gravel drive is used to access two houses along the gravel drive; that after the second home, an impediment had been placed between the gravel road and Richard's property; that at one time the drive had gone "all the way through"; and that "[f]rom the point it's blocked off, it's like a dirt trail." He testified that there were not any other roads that access Richard's property, stating that if there were, they

would have been on the survey. He indicated that he was not aware of a dedicated easement accessing Richard's property along the east line of the property, also running north from Highway 294.

Richard testified that Nellie's property bordered his property; that for his entire life, he had accessed the property, including what is now Lot 10 that was left to him by his parents, traveling Kinfolks Road and crossing over his Aunt Nellie's land. More particularly, he explained:

I received the property upon my mother's death, which was four years ago. I believe it was deeded to us in 1976. My parents maintained the property until they passed. They had a life estate. They deeded other property to my other brothers and sisters. My property is the furthest northwest corner of the property that was deeded by my parents to their children. It is the back of the property. I was not granted any kind of easement for access to my property that I know of. The property was landlocked when I received it. There are boundary markers on my property. It outlines my land. I have heard of Kinfolks Road. This road starts at Highway 294 and runs straight north. It leads to the back of all the property and goes on to a minnow pond on Art Cole's property. It does not go across Ms. Garringer's property. The road does turn right onto the property of Aunt Nellie. I have used that road. I have used it as long as there has been a road there my entire life. Before there was a road, it was my parents'. There was a trail that goes across the back of the property to connect it before there was even a Kinfolks Road. They used it for access going to the minnow ponds and to the back of Mr. Cole's property going to our property because of the circumstances. There's a creek separating that goes across all the property. I

can't think of the name of the creek. When it rains you have to go down that road to get to the property. That's just the way it was.

My parents gave me the property.... The same people that deeded my property to me deeded it to her [Nellie].

I stopped having access to my property off of Kinfolks Road two and a half years ago when all this started. They put up no trespassing signs and told me not to come back across there no more.... There is no other road to access my property.

Richard also testified about photographs; they were introduced as a group exhibit and showed accumulated water on the thirty-foot easement running north from Highway 294 toward Richard's property on the east side, which he described as a utility easement. He acknowledged that the deeds from his parents with respect to tracts one, two, seven, and nine described a thirty-foot easement along the east side that eventually turned west and extended all the way to the west line of the original property. He explained that if he were to travel to his property along a route close to this easement when it rained, he would have to go through water. He said that he did not think he could pass through it in his vehicle. He also testified that it would cost several thousand dollars to build a road and place culverts along this thirty-foot easement to his property.

Nellie testified as part of Richard's case. She stated that Kinfolks Road runs on her property. According to her, there is a "little driveway across the back of it, but it's not on the line." She explained that the road access does not reach all the way to Richard's property but that she did not know how far it was from the end of Kinfolks Road to his property. She explained that he had used her property

before to access his property but that "he had a load of hay fall on a truck that we had to pay for." She said that she then instructed her son, Johnny, to block the drive with a fence.

At the conclusion of Richard's case, Nellie moved for a directed verdict, which was denied by the trial court.

As part of Nellie's case, Johnny Garringer, her son, testified that he lives on her property along the drive way that runs east off Kinfolks Road. He stated that he put a fence up by Richard's property to put a pasture back there on the west. He testified that the lane or driveway was created when he put a house back there in 1990 or 1991 and that prior to that there was nothing there but a fence row. According to Johnny, Richard started "going across this land to access his property about two or three years after [Johnny] moved down there." He also explained that Richard's father had prepared an access route along the east side of his property. Johnny stated that he does not know if that route would be under water but that even Kinfolks Road and the lane to his house were sometimes under water. In describing a photographic exhibit, he explained that it showed the fence between Nellie's property and Richard's property, and he showed "where the lane used to come in." Johnny testified that no one uses the lane across Nellie's property now; that it has not been used in two years, which was when Richard was told he could no longer use it.

Tim Curtis, Nellie's son-in-law, testified that it was his understanding that an easement runs along the east side of the property belonging to Richard's family. He described it as "kind of a field running down through there." He identified one of the photos depicting that area as taken "last week," and said that it "wasn't flooded at that time."

Nellie testified that when she and her husband purchased the property in 1963, there was not a lane running back over to what ended up being Richard's property. And like Johnny, she said that there wasn't any kind of lane back there until a couple of years after Johnny moved there in the early nineties. She said that "[y]ou could drive across it, but you would have to go over plow rows where tractors had turned around."

## Discussion

Appellant contends to this court that 1) the trial court erred in finding that an access existed at the time of the unity of title and at the time of the severance of title; 2) the trial court erred in finding that the appellee met his burden of proof to establish an easement by implication when there was no evidence of the access used across the appellant's property being obvious and permanent; and 3) the trial court erred in finding that the easement was necessary, i.e., that there was no other reasonable mode of enjoying the dominant tenement without the easement. We find no error.

Each of the findings challenged by Nellie involve questions of fact, and we are not left with a definite and firm conviction that a mistake was made by the trial court in concluding that appellee had satisfied his burden of proving an easement by implication. Richard testified that he had used the road turning right off of Kinfolks Road onto what is now his Aunt Nellie's property "as long as there has been a road there my entire life"; that there was a trail across the back of the property to connect it before there was even a Kinfolks Road; that his family had used it for "access going to the minnow ponds and to the back of Mr. Cole's property going to our property because of the circumstances"; that a creek goes across all of the property and

that "when it rains you have to go down that road to get to the property." Matters of credibility and the weight to be given to testimony are for the fact-finder. *Orr, supra.* There was also photographic evidence that the thirty-foot easement along the eastern boundary of Richard's siblings' property is impassable at times because of flooding.

Affirmed and remanded with instructions to amend the June 22, 2009 order to include a specific legal description of the easement at issue in this case.

GLADWIN and KINARD, JJ., agree.