Cite as 2024 Ark. App. 433

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-23-222

|  |  |
|---|---|
| DIAMOND K INVESTMENTS, INC.<br>APPELLANT<br><br>V.<br><br>1330 LLC<br>APPELLEE | Opinion Delivered September 18, 2024<br><br>APPEAL FROM THE FAULKNER<br>COUNTY CIRCUIT COURT<br>[NO. 23CV-22-470]<br><br>HONORABLE CHARLES E. CLAWSON<br>III, JUDGE<br><br>REVERSED AND REMANDED |

**WENDY SCHOLTENS WOOD, Judge**

I. *Introduction*

This case involves a dispute between adjacent property owners regarding whether the owner of an easement for the purpose of a roadway, 1330 LLC ("1330"), may erect a fence and gate across the roadway of the landowner, Diamond K Investments, Inc. ("Diamond K"), over its objection. The circuit court found that 1330's placement of a fence and gate across the roadway was a reasonable improvement and not an unreasonable burden on Diamond K. On the basis of this finding, the circuit court denied Diamond K's motion for summary judgment on the easement issue; granted 1330's motion for partial summary judgment, which dismissed Diamond K's counterclaims; and denied Diamond K's motion to reconsider the order denying Diamond K's motion for summary judgment. On appeal, Diamond K contends, first, that 1330 does not have the right to encumber the road on

Diamond K's property with a fence and gate; alternatively, that 1330's placement of a fence and gate over the road was unreasonable; and, finally, that the circuit court should not have dismissed Diamond K's counterclaims. We reverse the court's orders denying Diamond K's motion for summary judgment, granting 1330's motion for partial summary judgment, and denying Diamond K's motion for reconsideration, and we remand for proceedings consistent with this opinion.

## II. *Facts*

On January 12, 1999, Diamond K purchased property by warranty deed "[s]ubject to a right of way for roadway purposes over and across the following described lands in favor of [adjoining property landowner] A.W. Renfroe and Virginia L. Renfroe." The deed specifically described the express easement as an approximately thirty-foot-wide right-of-way. The easement is referred to herein as Tract 4.

In 2018, 1330 purchased the property adjoining Diamond K's property from Julia and James Roberson, who had acquired it from the Renfroes in 2005. The Robersons represented to 1330 that they also owned Tract 4, containing the roadway easement, in fee simple; they executed a deed purporting to convey Tract 4 to 1330; and 1330 believed that its purchase price included an amount in exchange for this roadway. 1330's property is currently under lease by a tire company.

In November 2021, 1330 erected a fence across the north end of the roadway and a fence with a gate across the south portion of the roadway "to prevent thefts of property experienced by the business operating on the property (as well as neighboring businesses)"

2

and provided Diamond K with the access code. On November 23, Diamond K sent a letter to 1330 informing it that the fencing and gate constitute a trespass on its property and demanding that 1330 remove them immediately.

This is an arial photograph of the parties' adjoining properties and the easement.



The blue lines mark the approximate boundaries of Diamond K's property; the white lines mark the approximate boundaries of 1330's property; and the area defined by the red lines is the easement, which 1330 has enclosed with a fence on the north end and a fence and a gate on the south end.

III. *Procedural History*

3

On April 20, 2022, 1330 filed a complaint against Diamond K asking the court to quiet title to Tract 4 in 1330 or, in the alternative, to declare that 1330 is entitled to maintain the fences and gate erected across Tract 4 for protection against theft.[1] 1330 alleged that the fences and gate did not unreasonably restrict Diamond K's access to its property because Diamond K's property was undeveloped woodlands, Diamond K has never used the roadway for ingress and egress, and 1330 provided Diamond K with the access code to the lock on the gate at the south end of Tract 4.

Diamond K filed an answer asserting that its warranty deed (attached as an exhibit to its answer) regarding Tract 4 "speaks for itself" and that it owns Tract 4 on which 1330 erected the fences and gate; denying that the Robersons had any title to Tract 4 to convey to 1330; admitting that 1330 has a right-of-way for roadway purposes over and across Tract 4; and claiming that 1330 had erected fences and a gate on Tract 4 and that Diamond K had asked 1330 to remove them. Diamond K also filed counterclaims for trespass, nuisance, negligence, ejectment, and unjust enrichment claiming that 1330 has no right as the owner of the easement to erect fences and a gate and that doing so interfered with Diamond K's use and enjoyment of the property. Diamond K asked the court to enjoin 1330 to remove the fences and gate and eject 1330 from its property.

---

[1] 1330's complaint also contained claims against the Robersons and the relevant title-insurance companies for breach of contract, breach of fiduciary duty, and unjust enrichment for misleading it regarding Tract 4. These claims have all been resolved, were dismissed by the circuit court, and are not at issue in this appeal. The parties on appeal agree that Tract 4 is owned by Diamond K subject to 1330's easement.

1330 filed a motion to dismiss the counterclaims arguing it was "undisputed" that thieves had stolen property from 1330's tenant, that Diamond K did not use the roadway to access its property, that 1330 provided the access code to Diamond K, and that the fences and gate did not unreasonably interfere with Diamond K's rights.

On July 28, Diamond K moved for summary judgment alleging as undisputed facts that it was the fee-simple owner of Tract 4 on which 1330 erected the fences and gate, specifically setting forth the description in an attached warranty deed conveying Tract 4 to Diamond K. Diamond K further alleged that 1330 has a "right of way for roadway purposes over and across" Tract 4 as specifically set forth in the attached warranty deed; that 1330 was the dominant estate and Diamond K the servient estate regarding Tract 4;[2] and that 1330 refused to remove the fences and gate after Diamond K sent a letter to 1330 informing it that they constituted a trespass and demanding their removal. Diamond K claimed that the fence erected by 1330 on the north end of Tract 4 prohibited any ingress or egress to Diamond K's property and that the fence with a gate on the south end required an access code, further encumbering Tract 4. Diamond K argued that 1330 was intentionally trespassing on Tract 4, had created a nuisance that unreasonably interfered with Diamond K's access to and use of its property, and had been negligent in erecting and maintaining the fence. Diamond K asked the court to eject 1330 from Tract 4 and require it to remove the

---

[2]The land over which an easement is imposed is known as the servient tenement or estate, and the land having the right of use is the dominant tenement or estate. *Burley v. Bradley*, 2021 Ark. App. 105, at 13, 619 S.W.3d 49, 57.

5

fences and gate at its cost. Diamond K requested damages, punitive damages, attorney's fees, and costs. In addition to the warranty deed, Diamond K attached the affidavit of its president, Bruce Keathley, in which he states that Diamond K is the fee-simple owner of the disputed property; that 1330 had acquired the adjoining property and thus had an easement over Diamond K's property for roadway purposes as specifically described and set forth in Diamond K's warranty deed; that Diamond K had not and would not give 1330 permission to erect fences or a gate over and across Tract 4; that the erection of fences and a gate had damaged Tract 4; and that Diamond K will incur costs and expenses to remediate Tract 4 following the removal of the fences and gate.

In response to Diamond K's motion, 1330 contended that Diamond K was incorrect that the law was different regarding the rights of the owners of the dominant and servient estates. 1330 argued the governing law was that neither party shall unreasonably interfere with the use of land by the other, citing *Massee v. Schiller*, 243 Ark. 572, 578, 420 S.W.2d 839, 843 (1967). 1330 claimed that because Diamond K stated in its answer to 1330's complaint that it was without sufficient information to admit or deny the allegation that its tenant had experienced trespassers and thieves, it is undisputed that property had been stolen from 1330's tenant. It then argued that Diamond K did not have a "wholesale right" to prohibit 1330's tenant from protecting its personal property that had "indisputably been stolen absent the fence and gate." 1330 argued that the issue was the reasonableness of each party's actions and the burden on each party's property interest regardless of whether the party is the owner of the servient or dominant estate. 1330 attached the affidavit of its

6

counsel, who stated that 1330's complaint alleged it was entitled to maintain fences and a gate over tract 4 "to protect against thefts that [its] tenant has experienced absent that gate and fence."

On August 30, the court conducted a hearing on the motions. 1330 agreed that its easement was for roadway purposes but argued that the law required the court to conduct a "balancing test of reasonableness and interference." 1330 contended that the fences and gate were erected because its tenant was experiencing "lots of" personal-property theft. For the first time, 1330 argued that it could not solve the theft problem by placing a fence on its own property rather than on Diamond K's property because there was not enough room on its property for big trucks to turn around if a fence was placed on 1330's property line. 1330 again contended that the fences and gate did not unreasonably interfere with Diamond K's property rights because Diamond K did not use Tract 4 for ingress or egress, and 1330 had provided Diamond K with the access code to the gate.

Diamond K argued that the dominant estate could not expand, or further burden, the servient estate beyond the purpose of the express easement: here, "a right of way for roadway purposes." Diamond K argued that there was no Arkansas case allowing a dominant-estate owner to encumber the servient estate beyond the express purpose of a right-of-way and that the reasonableness test applies only when the servient-estate owner places encumbrances, gates, and fences on the dominant-estate owner's easement. Diamond K sympathized with 1330's theft issues but maintained that it was not Diamond K's problem to solve and speculated that 1330 could erect a fence with wheels on its own property to

7

solve it, claiming that the fences and gate on Diamond K's property were merely a "ploy" for 1330 to acquire Diamond K's property in fee, which it could not do. Diamond K contended that maintaining fencing and gating on its property after Diamond K's verbal and written requests for 1330 to remove them constituted an intentional trespass. Diamond K contended that the fences unreasonably interfered with its property by blocking its access to the remainder of its land and constituted a nuisance; that 1330's actions violated the duty of care it owed to Diamond K, constituting negligence; and that these actions caused damages to Diamond K.

The court entered an order on October 12, 2022, finding that Diamond K was the fee-simple owner of Tract 4; that Diamond K's ownership was subject to a "right of way for roadway purposes"; that 1330 had only an easement across Tract 4; that both 1330 and Diamond K used Tract 4 to access other tracts of land; and that 1330 had installed a fence and gate at the south end of Tract 4 and a fence at the north end that restricted access to its property. The court rejected Diamond K's legal arguments and adopted 1330's view of the governing law—that neither the dominant nor servient estate may unreasonably interfere with the rights of the other, stating specifically that "the dominant estate has the ability to do whatever is necessary to preserve the easement, including reasonable repairs and improvements." The court then reasoned as follows:

> b. With the legal framework in place, we must then look to what is reasonable. What is reasonable or unreasonable will vary with the facts of the case. But courts have put some guiderails such as the holder of the dominant estate has a duty to use the property so as not to damage the owner of the servient estate. *Davis v. Arkansas Louisiana Gas Co.*, 248 Ark. 881, 454 S.W.2d 331 (1970). The court in *Massee v.*

8

*Schiller*, 420 S.W.2d 839, 243 Ark. 572 (Ark. 1967), also provided some guidance when the rights of the owner of the servient estate might conflict with the interests of the owner of the dominant estate when they reasoned:

> Where the owner of land has a right to use it, subject to the prescriptive right of another to travel a well-defined designated route across the land, some degree of inconvenience is to be expected and tolerated in the exercise of these overlapping rights, and the conflicts that arise in the exercise of such rights are measured by reasonableness of interference of one with the other. What is reasonable or not reasonable depends on the facts and circumstances of each case and is a matter on which the minds of reasonable men may differ.

> With all of that in mind, it is clear that the dominant estate has the ability to make physical modifications or improvements to the land if it does not unreasonably interfere with the servient estate and those modifications are within the bounds of the defined reason of the easement.

c. Here, the modifications are the gate and the fence. The easement was established for roadway purposes. Diamond K's use of the property at this point only serves as a means of accessing another tract of land owned by Diamond K which is an undeveloped, heavily wooded parcel. Based on the specific facts and circumstances here, it is the opinion of the Court that the [south fence and] gate is a reasonable improvement and not an unreasonable burden on Diamond K considering that Diamond K has been provided an unrestricted access code. The [north] fence is a different evaluation and one that seems to be an unreasonable modification and overreach by 1330, LLC.

The court granted Diamond K's motion for summary judgment in part and denied it in part, stating that the fence on the north of Tract 4 was an "unreasonable modification" and must be removed[3] but that the gate on the south end was a "reasonable improvement and not an unreasonable burden on Diamond K" and could remain. The court did not rule on 1330's motion to dismiss Diamond K's counterclaims.

---

[3]There is no issue regarding this ruling on appeal.

On October 31, 1330 filed a motion for partial summary judgment, arguing it was entitled to judgment on all its claims. 1330 argued that the court had concluded there were no genuine issues of material fact in 1330's case against Diamond K, incorporating the circuit court's October 12 order in its entirety. 1330 contended that Diamond K had espoused an incorrect legal standard throughout its counterclaims, motion for summary judgment, and discussions; that the court had adopted 1330's interpretation of the law; and that 1330 was entitled to summary judgment—that is, a declaration that the south fence and gate is a reasonable modification across the right-of-way and a permanent injunction preventing Diamond K from attempting to restrict 1330's reasonable use of the right-of-way. In connection therewith, 1330 argued that it was also entitled to summary judgment on all Diamond K's counterclaims.

On November 14, Diamond K filed a response to 1330's motion and a contemporaneous motion for reconsideration of the court's order denying its motion for summary judgment or, in the alternative, an order clarifying and finalizing judgment as to all issues regarding Diamond K. In both, Diamond K again claimed that the circuit court had incorrectly interpreted the law.

On November 29, the circuit court denied Diamond K's motion for reconsideration and granted 1330's motion for partial summary judgment dismissing Diamond K's counterclaims. The circuit court specifically found that "a gated fence across the right of way is a reasonable improvement where [1330] has given Diamond K an unrestricted access code to the gate."

IV. *Governing Law*

Diamond K filed this appeal from the denial of its motion for summary judgment and its motion to reconsider the denial of its motion along with the grant of 1330's motion for partial summary judgment dismissing its counterclaims.[4]

As the Arkansas Supreme Court has stated:

> Moving to our standard of review, "summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law." *Cannady v. St. Vincent Infirmary Med. Ctr.*, 2012 Ark. 369, 423 S.W.3d 548. "Ordinarily, upon reviewing a circuit court's decision on a summary-judgment motion, we would examine the record to determine if genuine issues of material fact exist." *May v. Akers–Lang*, 2012 Ark. 7, 386 S.W.3d 378. However, in a case where the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Hobbs v. Jones*, 2012 Ark. 293, 412 S.W.3d 844. "When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo." *State v. Cassell*, 2013 Ark. 221, at 4–5, 427 S.W.3d 663, 666 (citations omitted). "De novo review means that the entire case is open for review." *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted).

*Washington Cnty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175.

---

[4]Although an order denying a motion for summary judgment is generally not appealable because it is an interlocutory order, we will review certain interlocutory orders in conjunction with the appeal of a final judgment. *Zulpo v. Farm Bureau Mut. Ins. Co.*, 98 Ark. App. 320, 255 S.W.3d 494 (2007). In *Zulpo*, we reviewed an order denying summary judgment in conjunction with the appeal of an order granting summary judgment. Because the circuit court's order granting partial summary judgment to 1330 relied principally on its denial of Diamond K's motion for summary judgment, involved the same facts and legal conclusions, and constituted a final order terminating the proceeding below, we will review the court's denial of Diamond K's motion in conjunction with the court's grant of 1330's motion. *See Nichols v. Culotches Bay Navigation Rts. Comm., L.L.C.*, 2009 Ark. App. 365, at 6, 309 S.W.3d 218, 221.

We agree with the parties that a determination of the legal principles controlling this case is essential to our analysis, and therefore we turn first to the governing law. An easement is a nonpossessory interest in the land of another, which traditionally involves the grant of a right-of-way over the land of another or the right to use another's land for a specific purpose consistent with the other's ownership. *Hanna v. Robinson*, 86 Ark. App. 180, 185, 167 S.W.3d 166, 170 (2004). The land over which the easement is imposed is known as the servient tenement or estate, and the land having the right of use is the dominant tenement or estate. *Burley*, 2021 Ark. App. 105, at 13, 619 S.W.3d at 57. An easement may be created by an express grant, or it may be created by implication, prescriptive use, or necessity. *See, e.g.*, *Dray v. Likens*, 2013 Ark. App. 118. Subject to the privileges of the owner of the easement, the possessor of the servient tenement retains the usual privileges that go with possession and may make all uses of his land that do not interfere with the use authorized by the easement. *Massee*, 243 Ark. at 579, 420 S.W.2d at 843 (quoting *Restatement of the Law*, *Property* § 481, cmt. (1944)).

Critical to our analysis of the governing law in this case is the fact that 1330's easement is an express easement created by, and set forth in, Diamond K's warranty deed. The extent and limitations of an express easement are usually fixed by the conveyance and set out in its terms. *Id.*, 420 S.W.2d at 843. We distinguished the law governing an express easement from the law governing undefined easements in *Wilson v. Johnston*, specifically stating in that case that the circuit court had erroneously applied the law pertaining to an undefined easement in reaching its decision concerning an express easement. 66 Ark. App.

12

193, 198, 990 S.W.2d 554, 556 (1999). We acknowledged that an *undefined easement* is subject to "lines of reasonable enjoyment" but added that a court may not diminish or restrict the area of an *expressly defined* private way. *Id.*, 990 S.W.2d at 556.

Like the easement in this case, the easement in *Wilson* was an express easement for use as a "private way or private road." In *Wilson*, the circuit court limited the area of the easement and denied the owner of the dominant estate's requests to pave part of the easement and to place a fence along the edge of the easement. We stated that the creation of an express easement is evidenced by the language and circumstances of the grant and that the extent of the easement is to be ascertained from the language construed in the light of relevant circumstances. *Id.* at 200, 990 S.W.2d at 558. We said that the dominant estate is entitled to use and enjoyment of the entire easement area "for the clearly expressed purposes of the grant." *Id.*, 990 S.W.2d at 558 (quoting *Salmon v. Bradshaw*, 173 N.W.2d 281, 285 (S.D. 1969)). Finally, we noted that the dominant estate is responsible for preparation, maintenance, improvements, and repair of the easement "in a manner and to an extent reasonably calculated *to promote the purposes for which it was created*" without causing an undue burden upon the servient estate. *Id.* at 199, 990 S.W.2d at 557 (emphasis added). We then remanded to the circuit court to determine whether paving the road was a "reasonable repair" and affirmed the circuit court's denial of the dominant estate owner's request to build a fence, reasoning that the easement was granted as a private way and did not expressly contemplate a fence being erected.

13

In contrast with the law governing express easements, the supreme court has stated that it is with prescriptive easements where the difficulty arises and the relationship between the parties becomes subject to the governing principle that neither party shall unreasonably interfere with the use of the land by the other. *Massee*, 243 Ark. at 578, 420 S.W.2d at 842; *Jordan v. Guinn*, 253 Ark. 315, 321, 485 S.W.3d 715, 720 (1972).

> The difference in the judicial determination of the extent of easements by prescription and by grant lies largely in approach and process. In the case of an easement by prescription, both its creation and extent are ascertained from the adverse use of the property over a long period of time. In the case of an easement by grant, the creation is evidenced by the language and circumstances of the grant, and the extent of the easement is to be ascertained from the language construed in the light of relevant circumstances. The relative importance of the language and the circumstances varies from case to case, *depending upon the completeness and clarity of the language used. The less complete or clear the language, the more important the circumstances become.* Uses by the owner of the servient tenement made prior to the grant, as well as those made subsequent thereto, and the actions of the parties with reference to the easement after the grant may be considered *insofar as they aid in the ascertainment of the extent and meaning of the grant*. Comments, Restatement of the Law of Property, Servitude, § 483.

*Jordan*, 253 Ark. at 322, 485 S.W.2d at 720 (emphasis added).

As Diamond K points out, neither party has located an Arkansas case in which either this court or the supreme court has allowed the dominant estate to erect gates or otherwise expand a right-of-way or driveway easement. The only cases in which a gate or other obstruction has been allowed to remain are when the owner of the servient estate created the burden. *Massee*, 243 Ark. 572, 420 S.W.2d 839 (affirming cattleguards placed by servient tenement that did not unreasonably interfere with dominant tenement's easement); *Burley*, 2021 Ark. App. 105, 619 S.W.3d 49 (affirming erection of a gate by servient owner because

14

an owner has an inherent right to protect his property and the gate did not unreasonably interfere with the dominant owner's right of passage). As a general rule, the owner of the servient estate may erect gates across the right-of-way if they are located, constructed, or maintained so as not to unreasonably interfere with the right of passage and when they are necessary for the preservation and proper and efficient use of the lands constituting the servient estate. *Burley*, 2021 Ark. App. 105, at 13, 619 S.W.3d at 57.

The title and right to possession of the property belong to the servient tenement. The dominant tenement's right is merely a right-of-way over the land or the right to use the land for a specific purpose consistent with the other's ownership. *Hanna*, 86 Ark. App. at 185, 167 S.W.3d at 170. Easements are limited to the purpose for which they were created and should be of as little burden as possible to the servient owner. 28A C.J.S. *Easements* § 192 (2008). Owners of the servient tenement retain every incident of ownership that is consistent with the easement as well as the right to enjoy those incidents. *Id.* An easement owner gains no right to possess or occupy the land. *Id.*

V. *Discussion*

The issue in this case presents a question of law: may the owner of an express easement who has the right to use the easement only as a roadway to access its property encumber the easement with a gated fence? Diamond K contends that the circuit court incorrectly decided this legal issue, that the right-of-way in this case does not grant 1330 the right to erect a gated fence on Diamond K's property, and that if such a right does exist, it

15

was unreasonable under the circumstances. We agree that the circuit court did not properly apply the governing law, and we reverse its decision.

The easement here is an express easement created in a warranty deed, which specifically provides the following purpose: "a right of way for roadway purposes over and across [specifically described land, the scope of which the parties do not dispute.]" Tract 4 is not owned by 1330 and may not be used by 1330 for whatever purposes it deems convenient. It is irrelevant that 1330's new use of the easement property does not unreasonably interfere with Diamond K's current use of the property or that it has provided a gate-access code to Diamond K. Title, possession, and all incidents of ownership of the property belong to Diamond K, not to 1330. *See Wilson*, 66 Ark. App. at 200, 990 S.W.2d at 558.

In an express-easement situation, we have held that the dominant estate is entitled to use and enjoyment of the entire easement area "for the clearly expressed purposes of the grant." *Id.*, 990 S.W.2d at 558 (quoting *Salmon*, 173 N.W.2d at 285. The clearly expressed purpose of the grant in this case is a right-of-way for roadway purposes. There is no language in the grant here indicating that the easement is to be used to protect the personal property of the easement holder or its tenants. If 1330 wants fences and gates to protect its property, then it must place those fences and gates on its own property, irrespective of whether it might be more desirable to place them on the easement and regardless of whether Diamond K is currently using its property as a means of ingress and egress. Contrary to 1330's arguments, Diamond K is not preventing 1330 from protecting its property from thefts. Diamond K is simply not allowing 1330 to use Tract 4 to do so. While we recognize that the dominant

16

estate is responsible for preparation, maintenance, improvements, and repair of the easement, this "responsibility" is specifically limited to those improvements or repairs "reasonably calculated to promote the purposes for which [the easement] was created" that do not cause an undue burden on the servient estate. *Id.* at 199, 990 S.W.2d at 557. A fence and gate erected to prevent theft are not "improvements" to a "right-of-way for roadway purposes."

In support of its choice of the governing law that neither party may unreasonably interfere with the rights of the other and its weighing of the relative burden 1330's gate has placed on the parties, the circuit court cited cases that pertain to prescriptive easements and to cases in which the servient owner, rather than the dominant owner, erected the encumbrance. For reasons we set forth above, those cases are not applicable here. We hold as a matter of law that the scope of the express easement in this case does not authorize 1330 to place a fence and gate on Diamond K's property. Accordingly, we reverse the circuit court's orders denying Diamond K's motions for summary judgment and for reconsideration[5] and granting 1330's motion for partial summary judgment that dismissed Diamond K's counterclaims. We remand for proceedings consistent with this opinion.

Reversed and remanded.

BARRETT and HIXSON, JJ., agree.

---

[5]We note that 1330 also argues on appeal that Diamond K's motion for summary judgment was premature because no discovery had taken place and material facts were disputed. Because the disposition of this appeal revolves around a question of law, 1330's discovery argument is not applicable.

17

*Stacks Law Firm*, by: *Ryan F. Stacks*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Jason Owens Law Firm, P.A.*, by: *Michael A. Mosley* and *Brooklyn Parker*, for appellee.